UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UPSHER-SMITH LABORATORIES, INC., | Civil No. 16-556 (JRT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO TRANSFER VENUE** |
| FIFTH THIRD BANK, | |
| Defendant. | |

Richard T. Ostlund, Randy G. Gullickson, and Steven C. Kerbaugh, **BAER & LOUWAGIE P.A.**, 3600 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, for plaintiff.

Scott M. Rusert, Gregory A. Bromen, and Jennifer L. Cornell, **NILAN JOHNSON LEWIS P.A.**, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for defendant.

This action arises from a third-party, fraudulent scheme whereby Plaintiff Upsher-Smith Laboratories ("Upsher-Smith") sent nine foreign exchange ("FX") wire transfers totaling approximately $52,509,373.49 to an individual claiming to act at the direction of Upsher-Smith's Chief Executive Officer ("CEO") in the acquisition of a company. Upsher-Smith commenced this action in Minnesota state court alleging Defendant Fifth Third Bank ("Fifth Third"), the processor of the nine FX wire transfers, breached its contract and other legal duties when it sent the wire transfers based on the instructions of and confirmation by a single Upsher-Smith employee. Fifth Third removed this action to federal court and now seeks to transfer venue to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).

Because Upsher-Smith's choice of venue is entitled to considerable deference, and Fifth Third has not met its burden of showing the convenience of the parties and witnesses and the interest of justice strongly favor transfer to the Southern District of Ohio, the Court will deny Fifth Third's motion.

## BACKGROUND

Upsher-Smith is a privately held Minnesota corporation that engages in pharmaceutical manufacturing, distribution, and sales. (Compl. ¶ 6, Mar. 3, 2016, Docket No. 1; Decl. of Sheila Handy ("Handy Decl.") ¶ 3, May 26, 2016, Docket No. 28.) Upsher-Smith maintains its corporate headquarters in Maple Grove, Minnesota and employs approximately 76% of its 720 employees in Minnesota. (Handy Decl. ¶¶ 4-6.) Upsher-Smith also maintains its business records relating to FX trades, FX wire transfers, financial procedures, and banking relationships, including all documents and records relating to Upsher-Smith's association with Fifth Third, in Minnesota. (*Id.* ¶ 7.)

Fifth Third is a nationally regulated bank incorporated in Ohio. (Compl. ¶ 7.) Fifth Third maintains its corporate headquarters in Cincinnati, Ohio and employs over 19,000 people. (*Id.*; Decl. of Robert Tull ("Tull Decl.") ¶ 31, Apr. 7, 2016, Docket No. 20.) Of its 19,000 employees, only six currently work in Minnesota. (Tull Decl. ¶ 31.) Fifth Third allegedly maintains no FX trading or healthcare group personnel in Minnesota.[1] (Decl. of Joshua Livingston ("Livingston Decl.") ¶¶ 2, 17, Apr. 17, 2016,

---

[1] Upsher-Smith contests Fifth Third's characterization of its Minnesota employees, contending Fifth Third's "Managing Director – Foreign Exchange" is a Minnesota resident

(Footnote continued on next page.)

Docket No. 19.)  Fifth Third generates its agreements, maintains its business records, and houses its Wallstreet FX system – which confirms, validates, implements, and settles FX trades – in Ohio.  (Tull Decl. ¶¶ 9, 16.)

Both parties agree their relationship began when Upsher-Smith entered into a credit agreement with a number of banks, including JPMorgan Chase ("JPMorgan").  The parties disagree, however, on the formation of their business relationship.  Fifth Third contends Upsher-Smith solicited its services through JPMorgan and that Fifth Third did not accept Upsher-Smith's offer until Fifth Third clarified it provided services solely through Ohio.  (Livingston Decl. ¶¶ 4, 7-11.)  In contrast, Upsher-Smith contends the banks in the credit agreement, including JPMorgan, separately allocated the risk associated with the credit agreement to other banks, including Fifth Third, and that Upsher-Smith did not agree to allow Fifth Third to provide ancillary services until a Fifth Third employee residing in Minnesota solicited business from Upsher-Smith.  (Compl. ¶¶ 12-14; Decl. of Stephen Robinson ("Robinson Decl.") ¶¶ 4, 6-7, 9-10, May 26, 2016, Docket No. 27.)

Fifth Third began processing Upsher-Smith's FX trades and wire transfers around August 2013.  (Compl. ¶ 18.)  The parties entered into a contractual relationship using forms prepared by Fifth Third.  (*Id.* ¶ 16; *see also* Tull Decl., Ex. B.)  Upsher-Smith employees discussed and executed the contracts with Fifth Third while in Minnesota.

---

(Footnote continued.)

located in Fifth Third's Minnesota office.  (Compl. ¶ 13.)  Based on Fifth Third's submissions, it appears this employee no longer works for Fifth Third.  (Tull Decl. ¶ 35.)

(Compl. ¶¶ 16-17; Livingston Decl. ¶¶ 5, 10; Robinson Decl. ¶ 9-10.) Upsher-Smith also communicated with Fifth Third over the course of the business relationship from Minnesota by either phone or email – including requests for FX trades and wire transfers. (Tull Decl. ¶ 9-10; Robinson Decl. ¶ 9; Decl. of Christine Hopper ("Hopper Decl.") ¶¶ 5-6, May 26, 2016, Docket No. 26.)

As relevant to this action, Upsher-Smith completed an "FX Customer Information Form" which required, among other things, designation of Upsher-Smith's "Primary Confirmation Contact," "Secondary Confirmation Contact," and "Optional Confirmation Contact." (Compl. ¶¶ 16-17 & Ex. A; Tull Decl., Ex. B.) One major dispute underlying this action is whether the designation of a "Secondary Confirmation Contact" required Fifth Third to verify an FX trade or wire transfer with more than one Upsher-Smith employee.

On May 29, 2014, the Upsher-Smith employee designated as the "Primary Confirmation Contact" – Christine Hopper – received an email purporting to be from the CEO. (Compl. ¶ 21; *see also* Tull Decl., Ex. B.) The email advised Hopper that an attorney would contact her regarding the acquisition of a company. (Compl. ¶ 21) The email also told Hopper to "execute everything" the attorney needed and to keep the information about the acquisition confidential. (*Id.*) The purported attorney contacted Hopper who, over the course of several days, initiated nine FX wire transfers through Fifth Third. (*Id.* ¶ 65.) Fifth Third, at Hopper's request, did not inform anyone at Upsher-Smith about the transactions and did not halt the transactions based upon their irregularity. (*Id.* ¶¶ 68-69.) Ultimately, Upsher-Smith determined this email was not

from the CEO, but was part of a scam to defraud Upsher-Smith.  (*Id.* ¶ 21.)  Fifth Third assisted Upsher-Smith in recovering $12,746,589.97, but Upsher-Smith ultimately lost approximately $39,792,783.53 (*id.* ¶¶ 66-67) and ended their business relationship with Fifth Third in September 2015 (Livingston Decl. ¶ 15).

Upsher-Smith commenced this action in Minnesota state court, alleging Fifth Third:  (1) breached its contract; (2) breached the implied covenant of good faith and fair dealing; and (3) failed to comply with Article 4A of the Uniform Commercial Code, pursuant to Minn. Stat. § 336.4A-202.  (Compl. ¶¶ 73-94.)  Fifth Third removed this case to federal court and now seeks to transfer venue to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

### I.  STANDARD OF REVIEW

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "a district court may transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, [and] in the interests of justice."  The purpose of section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

When deciding a motion to transfer under section 1404(a), the Court considers three factors:  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice.  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691

(8th Cir. 1997). These factors merit "individualized, case-by-case consideration," in which courts "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). To prevail, the moving party must demonstrate the balance of the factors "strongly favors" transfer. *See, e.g.*, *Burks v. Abbott Labs.*, No. 08-3414, 2008 WL 4838720, at *1 (D. Minn. Nov. 5, 2008) (quoting *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1179 (D. Minn. 1996)). "Ultimately, the decision to transfer a case is committed to the discretion of the district court." *Luckey v. Alside, Inc.*, No. 15-2512, 2016 WL 1559569, at *4 (D. Minn. Apr. 18, 2016) (quoting *Jacques v. Dakota, Minn. & E. R.R. Corp.*, No. 07-248, 2008 WL 835651, at *1 (D. Minn. Mar. 27, 2008)).

Here, the parties agree Upsher-Smith could have brought this action in the Southern District of Ohio. The motion, thus, turns on whether Fifth Third met its burden of showing the balance of the section 1404(a) factors strongly favor transfer.

**II.   MOTION TO TRANSFER VENUE**

    **A.   Deference to Upsher-Smith's Choice of Forum**

Both the convenience and interest of justice factors require consideration of the plaintiff's choice of forum. *Luckey*, 2016 WL 1559569, at *4; *Howard v. Judge Law Firm*, No. 09-1644, 2010 WL 2985686, at *4 (D. Minn. July 26, 2010). "In general, federal courts give considerable deference to a plaintiff's choice of forum." *Terra Int'l, Inc.*, 119 F.3d at 695. But "the plaintiff's choice [of forum] is entitled to less deference when the plaintiff is not a resident of the selected forum and when the underlying events

giving rise to the action occurred outside the forum." *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972, 981 (D. Minn. 2013).

The parties agree Upsher-Smith is a resident of and has substantial ties to Minnesota. But Fifth Third argues Upsher-Smith's choice of forum is entitled to less deference because the operative events occurred in another state.

There are cases where the Court determined a Minnesota resident was entitled to less deference because all of the operative events occurred in another state. *See, e.g.*, *Hormel Foods Corp. v. Medina & Medina, Inc.*, No. 06-384, 2006 WL 2735491, at *2 (D. Minn. Sept. 25, 2006); *Nw. Territory Ltd. P'ship v. OMNI Props., Inc.*, No. 04-4531, 2005 WL 3132350, at *6 (D. Minn. Nov. 22, 2005); *GMAC/Residential Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc.*, No. 02-1224, 2003 WL 1572007, at *2-3 (D. Minn. Mar. 13, 2003). But where "not all of the operative events giving rise to the lawsuit occurred" outside the chosen forum, "the Court will not disrupt the presumption in favor of [plaintiff's] choice of forum." *DataCard Corp. v. Softek, Inc.*, 645 F. Supp. 2d 722, 732-33 (D. Minn. 2007).

Here, while the alleged omissions underlying Upsher-Smith's breach of contract claim arose in Ohio, some of the operative events occurred in Minnesota. The parties agree Upsher-Smith employees discussed and executed the contract with Fifth Third while Upsher-Smith employees were in Minnesota (Compl. ¶¶ 16-17; Livingston Decl. ¶¶ 5, 10; Robinson Decl. ¶¶ 9-10), Upsher-Smith communicated with Fifth Third from Minnesota by either phone or email (including requests for FX trades and wire transfers) (Tull Decl. ¶¶ 9-10; Robinson Decl. ¶ 9; Hopper Decl. ¶¶ 5-6), and Fifth Third allegedly

had at least one employee in Minnesota soliciting Upsher-Smith's business (Hopper Decl. ¶¶ 5-7; Robinson Decl. ¶ 9; *but see* Tull Decl. ¶¶ 33-34).  Thus, while alleged omissions certainly occurred in Ohio, events such as the formation of the contract occurred, at least in part, in Minnesota.

Therefore, because Upsher-Smith is a Minnesota company with substantial ties to the state and at least some of the events underlying this matter occurred in Minnesota, Upsher-Smith's choice of forum is entitled to considerable deference.

### B.     Convenience of the Parties and Witnesses

The Court must next consider the convenience of Upsher-Smith's chosen forum. When examining convenience, the Court considers:  "(1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."[2] *Vogel v. E.D. Bullard Co.*, No. 11-2563, 2012 WL 38825, at *3 (D. Minn. Jan. 9, 2012) (quoting *Terra Int'l, Inc.*, 119 F.3d at 696).

Fifth Third first argues venue in the Southern District of Ohio would convenience both parties because the majority of the evidence and witnesses are in Ohio.  To the contrary, the evidence shows the most convenient venue for either party is the state where

---

[2] The parties agree the applicability of each forum's substantive law is a neutral factor in this case.

its corporate headquarters is located. Namely, both parties would benefit from a venue where they employ most of their staff and maintain their business records. (Tull Decl. ¶¶ 9, 15-16, 36-38; Handy Decl. ¶¶ 7-9.) Because "[a] transfer should not be granted if the effect is to merely shift the inconvenience from one party to the other," such evidence does not show the inconvenience of venue in Minnesota for Fifth Third "'strongly' outweighs the inconvenience" to Upsher-Smith if the Court transferred this action to the Southern District of Ohio. *See Nelson v. Bekins Van Lines Co.*, 747 F. Supp. 532, 535 (D. Minn. 1990).

Second, Fifth Third argues venue should be transferred to the Southern District of Ohio because most of the witnesses are located in or closer to Ohio. But both parties identify a number of employee witnesses residing in either Minnesota or Ohio. And "the Court can assume that [employee witnesses] 'will appear voluntarily in a foreign forum.'" *Luckey*, 2016 WL 1559569, at *5 (quoting *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1138 (D. Minn. 2009)). Thus, whether the convenience of the witnesses weighs in favor of transfer turns on the accessibility of non-party witnesses.

Upsher-Smith identifies several former employees who appear central to the litigation and reside in Minnesota. Most importantly, Upsher-Smith highlights the following former employees who reside in Minnesota: the "Primary Confirmation Contact" who initiated the FX wire transfers, Christine Hopper; the "Secondary Confirmation Contact" at the time of the FX wire transfers, Seazon Patterson; and the individual primarily responsible for Upsher-Smith's decision to use Fifth Third for FX wire transfers, Stephen Robinson. (Handy Decl. ¶¶ 8-9.) In contrast, Fifth Third's non-

party witnesses provide redundant testimony to identified employee witnesses and only one non-party witness resides in Ohio.  (*See* Livingston Decl. ¶¶ 18-19; Tull Decl. ¶¶ 36-38).  Under these facts, the convenience of the witnesses weighs against transfer to the Southern District of Ohio.

Third, Fifth Third argues transfer is required because most of the relevant records, files, and documents are located in Ohio.  Most importantly, Fifth Third points out that its "Wallstreet FX system" – the system Fifth Third uses to confirm, validate, and implement FX trades – is located in Ohio.  From the record, the location of this system in Ohio may slightly favor transfer.  But Fifth Third does not allege it would be difficult for this evidence to be moved to Minnesota and, "given the ease of access to critical evidence through technology, the physical location" of this evidence is not integral to the analysis.  *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 794 n.3 (D. Minn. 2010).

Fifth Third finally argues this action must be transferred because Upsher-Smith's allegations arise solely from omissions that allegedly occurred in Ohio.  As set forth above, while many alleged omissions on the part of Fifth Third occurred in Ohio, some events underlying this action occurred in Minnesota.  Upsher-Smith signed the "FX Customer Information Form" in Minnesota.  (Compl. ¶¶ 16-17 & Ex. A; Tull Decl. ¶ 9.)  Upsher-Smith's course of performance under the contract, including telephone and email communications, occurred in Minnesota (Tull Decl. ¶¶ 5-8, 10; Hopper Decl. ¶ 7) and, at least according to Upsher-Smith, Fifth Third directly solicited Upsher-Smith's FX trading and wire transfer business in Minnesota (Robinson Decl. ¶ 9).  Further, all of the conduct

regarding the underlying fraud against Upsher-Smith occurred in Minnesota. (*See* Compl. ¶¶ 21-62.)

"Given that the negotiations, and arrangements, were made between parties residing in Minnesota and Ohio" at the time Hopper initiated the FX wire transfers, there is "no unreasonableness in having the action venued in either Minnesota or Ohio." *Integrated Molding Concepts, Inc. v. Stopol Auctions, L.L.C.*, No. 06-5015, 2007 WL 2263927, at *8 (D. Minn. Aug. 6, 2007). Thus, the location where the conduct complained of occurred does not weigh heavily in favor of either party. *Id.*; *see also Petters Co., Inc. v. Stayhealthy, Inc.*, No. 03-3210, 2004 WL 1630932, at *3 (D. Minn. 2004).

For these reasons, the Court will find that Fifth Third has not shown the convenience of the parties and witnesses strongly favors transfer to the Southern District of Ohio.

### C. Interests of Justice

The Court must also consider whether transferring venue would promote the interests of justice. When examining the interests of justice, "courts generally consider (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment,

(5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."³  *Howard*, 2010 WL 2985686, at *4.

The only interests of justice factor emphasized by Fifth Third, other than the plaintiff's choice of forum,⁴ are the advantages of having an Ohio court determine the outcome of this case.  Fifth Third argues the Southern District of Ohio has the strongest interest in adjudicating this action because the alleged omissions occurred in Ohio.

It is certainly true that the Court has transferred cases where another forum had "the greatest interest in the outcome of [the] case because the alleged torts and injuries occurred within that state."  *Strong v. Stryker Corp.*, No. 10-2315, 2011 WL 1576473, at *2 (D. Minn. Apr. 26, 2011).  But in cases where this occurs, both parties are generally residents of states other than Minnesota.  *See id.* at *1; *Chapman v. I-Flow Corp.*, No. 10-136, 2011 WL 884363, at *1 (D. Minn. Mar. 14, 2011).  Further, the Court has held "Minnesota has an interest in providing a forum to parties seeking to remedy [an] alleged breach of contract with its residents."  *Petters Co.*, 2004 WL 1630932, at *4.

---

³ Fifth Third either does not address or concedes that the following factors are neutral: comparative costs of litigating in each forum, ability to enforce a judgment, obstacles to a fair trial, and conflict of law issues.

⁴ Fifth Third asserts the judicial economy factor favors transfer, arguing judicial economy is served when most of the witnesses and evidence are located in Ohio.  But the judicial economy "factor typically involves consideration of docket backlog and the time to disposition in the two forums."  *Oien v. Thompson*, 824 F. Supp. 2d 898, 905 (D. Minn. 2010) (concluding the defendant presented "no logical reason why transfer would promote an efficient resolution of this dispute" when the defendant merely argued the "operative facts" occurred in North Dakota). Because Fifth Third admits docket congestion is a neutral factor, judicial economy does not weigh significantly into the Court's balancing of the interests of justice factors.

Here, it is undisputed that Upsher-Smith is a Minnesota resident and, as such, Minnesota has a strong interest in providing Upsher-Smith a forum to remedy alleged breaches of contract. Therefore, the Court will find Fifth Third has not shown the interests of justice strongly favor transfer to the Southern District of Ohio.

### D. Balance of the Factors

Overall, the Court will deny Fifth Third's motion to transfer. Upsher-Smith's choice of venue is entitled to considerable deference, and Fifth Third has not met its burden of showing the convenience of the parties and witnesses and the interest of justice strongly favor transfer.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Fifth Third's motion to transfer venue [Docket No. 15] is **DENIED**.

DATED: December 29, 2016  
at Minneapolis, Minnesota.

s/ John R. Tunheim  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court